**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| WASEEM DAKER, | : | |
| | : | |
| Plaintiff, and | : | CIVIL ACTION NO. |
| | : | 1:01-CV-3257-RWS |
| JOSHUA KENNEDY a/k/a | : | |
| YUSHA ABDUL-QUDDUS | : | |
| | : | |
| Intervenor-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JIM WETHERINGTON, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

Plaintiff Waseem Daker ("Plaintiff") initiated this action as a *pro se*

prisoner,[1] bringing claims under 42 U.S.C. § 1983 and the Religious Land Use

and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-1, et seq. (the

"RLUIPA").  He named as Defendants the Georgia Department of Corrections

("GDC"), former GDC Commissioner Jim Wetherington, Commissioner James

---

[1] Plaintiff has since been released from prison.

E. Donald, Warden Michelle Martin, Deputy Warden Cynthia Nelson, and Deputy Frank Turner, alleging that these individuals did not adequately accommodate his religious beliefs under applicable law.

Specifically, Plaintiff took issue with three prison policies.  First, he opposed a policy that required inmates to be clean shaven, asserting that the policy burdened his religious exercise as a Muslim.  Second, Plaintiff opposed being denied weekly Ta'lim, an Islamic educational class, in the absence of available supervision by an outside Muslim prayer leader, known as an Imam. He contended that participation in such classes is required of Muslims, and asserted that Defendants' denial of Ta'lim unlawfully burdened his religious exercise.   Finally, Plaintiff opposed being required to recite a "Code of Ethics." He alleged that the forced recitation of such a Code unlawfully burdened his exercise of Islam, and further urged that it violated his First Amendment right of free speech.  In early 2005, both Plaintiff and Defendants moved for summary judgment.

In an Order dated June 30, 2005, the Court permitted Intervenor Joshua Kennedy a/k/a Yusha Abdul-Quddas ("Intervenor") to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a)(2).  On July 29, 2005,

Intervenor likewise moved for summary judgment in this matter [263], adopting the arguments raised in Plaintiff's earlier-filed Motion for Summary Judgment [234].  His motion was not placed on the docket, however, until late in the day on August 1, 2005.

Earlier on August 1, the Court issued an Order resolving all the docketed motions then before it, including the summary judgment motions filed by Plaintiff and Defendants.  It granted Defendants summary judgment on Plaintiff's claims challenging the "shaving requirement" and the policy requiring prisoners to recite a Code of Ethics, Plaintiff's claims for money damages against Defendants in their official capacities, and his claims seeking relief under the Georgia Constitution.  (See Aug. 1, 2005 Order [262] at 54-55.)  It granted summary judgment to Plaintiff, however, insofar as he sought declaratory and injunctive relief *vis-a-vis* the policy denying him weekly Ta'lim services.  (Id. at 55.)  The Court found that the policy failed to survive scrutiny under the RLUIPA.  (Id.)  Because it had not yet appeared on the docket, the Court did not address Intervenor's summary judgment motion in its August 1, 2005 Order. Nothing in the Order, moreover, purported to resolve Intervenor's claims.

3

Since that Order was handed down, Intervenor has moved to supplement his motion for summary judgment [265], to modify the injunction [275], and has twice moved to vacate the Order [267, 271]. He has additionally requested leave to supplement his motion to amend and vacate the judgment [279]. Plaintiff, for his part, has filed a Motion to Amend and Vacate Order/Judgment [268], a Motion to Publish [274], and a Motion to Modify Injunction [276].

## Discussion

### I.    Plaintiff's Motions

Plaintiff's motions can be resolved with little discussion. First, his Motion to Modify the Injunction [276], in which he asks the Court to enjoin Defendants from limiting the provision of Ta'lim to Friday afternoons directly following the provision of Jumu'ah services, is **DENIED as moot**. In light of his release from prison, Plaintiff lacks standing to pursue this claim. McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984).

His Motion to Publish [274] is likewise **DENIED**.

Furthermore, after reviewing Plaintiff's Rule 59 Motion to Amend and Vacate Order/Judgment [268], the Court finds the arguments raised therein

4

unpersuasive.[2]  That motion is **DENIED**.

## II.     Intervenor's Motions

### A.     Preliminary Matters

The Court begins its consideration of Intervenor's motions by addressing

his Motion to Vacate [267] and Motion to Modify Injunction [275].  Intervenor

---

[2] The only objection Plaintiff raises in his motion that has even arguable merit is his claim that this Court should have appointed an expert witness to assist him in prosecuting his claims through summary judgment.  As related below, the Court stands by its decision not to appoint an expert in this matter to assess the impact of facial hair on the identification of inmates.  Even if it were inclined to appoint such an expert on Intervenor's request, however, it would decline to vacate its prior Order on Plaintiff's objection.

First, Plaintiff's reliance on this Court's December 23, 2002 Order to argue that he had a standing request for appointment of an expert is misplaced.  In that Order, the Court denied his motion to appoint an expert, reasoning that "determining penological needs and possible alternatives is not so complicated that an expert is required to establish Plaintiff's case [and] Plaintiff has illustrated a good understanding of the potential factual issues in his interrogatories and requests for production."  (Dec. 23, 2002 Order [62] at 27.)  It concluded, "At this stage of the case–prior to summary judgment–the Court finds the help of an expert is not necessary to identify whether there are issues of fact, and the issues are not so complex that Plaintiff would require court appointment of an expert."  (Id.)  That language certainly left open the possibility that Plaintiff could again move for the appointment of an expert, but did not commit the Court to *sua sponte* consider the propriety of such appointment if it became apparent at any time that it might prove useful to Plaintiff.

Second, even assuming that it was somehow incumbent on the Court to periodically reconsider its December 2002 decision, there would be no reason to vacate its prior Order now.  Plaintiff has been released from prison, and any request for injunctive relief *vis-a-vis* the "shaving requirement" would be moot.  See McKinnon, 745 F.2d at 1363.  Moreover, the substantial authority in this Circuit upholding such restrictions on inmates would foreclose Plaintiff from overcoming the qualified immunity bar to recovering damages on his claim.

moves to vacate the Court's August 1, 2005 Order, insisting the Court

purported to adjudicate his rights without giving him the opportunity to be

heard.  He argues that the Court should consider certain additional arguments he

wishes to raise before deciding whether his claims are viable.

Because the August 1, 2005 Order did not purport to resolve Intervenor's

claims, his motion [267] is **DENIED**.  The Court will independently address his

Rule 56 motion before entering any judgment applicable to him.

Intervenor's Motion to Modify Injunction [275], in which he requests that

the benefits of the Court's injunction respecting Ta'lim services be extended to

him, is likewise **DENIED**.  The propriety of  so extending the injunction will be

addressed in the course of the Court's resolution of Intervenor's Motion for

Summary Judgment.

### B.    Motion for Summary Judgment and Related Filings

As related above, Intervenor filed a Motion for Summary Judgment [263]

just days before the Court resolved Plaintiff's and Defendants' Rule 56

motions.  His filing was relatively brief, containing only four pages of argument

in which he predominately rested on the arguments raised by Plaintiff in his

papers.  Indeed, the only unique positions taken by Intervenor were his

6

disclaimer of any intention to rely on one of the proposed less-restrictive alternatives to the "shaving requirement" articulated in Plaintiff's motion, and an explanation as to why he did not believe his claims were barred for an alleged failure to exhaust administrative remedies.  Defendants have never responded to this filing, apparently operating under the misapprehension that the Court's August 1, 2005 Order disposed of Intervenor's claims.

Since Intervenor's motion was originally submitted, he has requested the opportunity to incorporate several arguments into his filing, and to supplement the record before the Court.  Among other things, he asks to be permitted to argue that (i) transferring Muslim prisoners to an institution that permits the wearing of beards is a "less restrictive means" of achieving the goals ostensibly served by the "shaving requirement," (ii) the less restrictive means proposed by Plaintiff in his Motion for Summary Judgment should be evaluated with respect to him as well, (iii) the benefits of this Court's injunction respecting the provision of Ta'lim services should apply with equal force to him, and (iv) the Court should consider the lawfulness of the "Code of Ethics" policy, both on a system-wide basis and as that policy is applied to Intervenor.  (See Intervenor's Mot. to Supplement Mot. for Summ. J. [265].)   In addition, he asks permission

7

to "supplement" his filings by, *inter alia*, (i) raising the argument that the "shaving requirement" should not be applied to inmates who have achieved "Trusty" status (contained in Intervenor's Motion to Vacate Judgment and Order [267]), and (ii) offering the Second Affidavit of Furqan Muhammad (appended to his Motion to Supplement Motion to Amend and Vacate Judgment [279]).  These requests have gone unopposed.

Considering the volume of the previously resolved Rule 56 filings and the number of arguments Intervenor wishes to inject into the summary judgment inquiry, the Court is not inclined to permit the motion to proceed in its current form.  It would be neither fair nor efficient to require Defendants to respond to the vast body of arguments raised in these piecemeal flings, and such a record invites inadvertent error by the Court in overlooking one or more of Intervenor's widely dispersed contentions.  Moreover, while the Court's prior Orders in this case do not necessarily constrain Intervenor, and do not carry *stare decisis* weight *vis-a-vis* his claims, he might be well-served to review the Court's prior decisions, and to concentrate more heavily on those arguments that have a stronger foundation in precedent.

AO 72A
(Rev.8/82)

For these reasons, Intervenor's Motion for Summary Judgment [263] is **DENIED with the right to re-file**.  He shall be permitted to file a single, comprehensive Rule 56 motion in accordance with the schedule established in subpart D, *infra*, and may offer in support of that motion, *inter alia*, the arguments enumerated above and the Second Affidavit of Furqan Muhammad. In light of this determination, Intervenor's Motion to Supplement Motion for Summary Judgment [265] and Motion to Supplement Motion to Amend and Vacate Judgment [279] are **DENIED as moot**.

###    C.    Request for Additional Discovery and Appointment of an Expert

In a filing captioned, "Intervenor's Response to and Adoption of 'Plaintiff's Rule 59(e) Motion to Amend and Vacate Order/Judgment' " [271], Intervenor requests (i) that he be permitted to take additional discovery, (ii) that he be allowed to interview Alan Adams, the Division Manager for the GDC,[3] and (iii) that the Court appoint an expert to assist him in this litigation.  (See

---

[3] Intervenor also asks that the Court strike Alan Adams' affidavit.  For the reasons set forth in the Court's August 1, 2005 Order, that request is denied.

AO 72A
(Rev.8/82)

Intervenor's Resp. to and Adoption of "Pl.'s Rule 59(e) Mot. to Am. and Vacate Order/J." [271].)

With respect to his first, general request for the opportunity to conduct discovery under Federal Rule of Civil Procedure 56(f), Intervenor fails to state what discovery he feels is necessary or appropriate in this case.[4]  Given the Local Rules' typical disallowance of any discovery by inmates bringing claims for violation of their civil rights, the Court is not inclined to mandate additional discovery in response to such a general request, especially in light of the voluminous materials already in the record.  See LR, NDGa, at Appendix F (setting forth "Discovery Tracks" for civil actions, and assigning civil rights actions by prisoners to a "0" Months Discovery track).

Second, Intervenor requests that he be permitted to interview Alan Adams respecting an earlier affidavit Mr. Adams submitted in support of the "shaving requirement."  Although this Court has, in a select few instances, permitted an inmate to interview prison officials, it is not inclined to do so here, where Mr.

---

[4] Notably, the record already reflects certain materials Plaintiff was able to procure through discovery, and Intervenor has not stated what information, other than that already sought, obtained, and filed by Plaintiff, might be useful to him in the prosecution of his claims.

10

Adams has already provided his testimony as it relates to the issues made

pertinent to this case.  Nevertheless, the Court will permit Intervenor to serve

interrogatories on the GDC requesting that Mr. Adams respond to inquiries

designed to uncover evidence that his "assertions [of security concerns] are

pretextual[ and/or] exaggerated, and that less restrictive means are available" to

achieve those ends.  (Intervenor's Resp. to and Adoption of "Pl.'s Rule 59(e)

Mot. to Am. and Vacate Order/J." [271] at ¶ 2.)

        Finally, the Court turns to Intervenor's request that he be provided with

an appointed expert "to testify to show that Alan Adams' assertions are

pretextual, that they are exaggerated, and that less restrictive means are

necessary [sic]."  (Intervenor's Resp. to and Adoption of "Pl.'s Rule 59(e)

Mot. to Am. and Vacate Order/J." [271] at ¶ 1.)  To be sure, the Federal Rules

of Evidence give the Court discretion to appoint an expert in appropriate

circumstances, and to direct the parties (or, in some circumstances, one party)

to compensate such a witness.  FED. R. EVID. 706; see Steele v. Shah, 87 F.3d

1266, 1270-71 (11th Cir. 1996) (suggesting district court could appoint expert in

case involving indigent party); Pedraza v. Jones, 71 F.3d 194, 197 n.5 (5th Cir.

1995) ("A few circuits have allowed appointment even when one party was

11

indigent and unable to bear a portion of the costs."); but cf. Young v. City of

Augusta, 59 F.3d 1160, 1170 (11th Cir. 1995) ("This court has never held

whether, or under what circumstances, such an arrangement might be allowable

and we need not do so now.").  That discretion, while it must be exercised in a

deliberative and principled fashion, is broad.  Compare Steele, 87 F.3d at 1270-

71 (district court erred where it "gave no explanation for the refusal to appoint"

a requested expert), with Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326

F.3d 1333, 1349 (11th Cir. 2003) ("[A]s long as the district court thoroughly

considers a request for the appointment of such an expert and reasonably

explains its ultimate decision thereon, that decision is vested in the sound

discretion of the trial court[.]"); see also Livingston v. Ratelle, 22 Fed. Appx.

929, 929 (9th Cir. 2002) (recognizing district court's broad discretion);

Tangwall v. Robb, No. 01-10008-BC, 2003 WL 23142190, at *3 (E.D. Mich.

Dec. 23, 2003) ("The determination to appoint an expert under this Rule rests

solely in the Court's discretion and is to be informed by such factors as the

complexity of the matters to be determined and the fact-finder's need for a

neutral, expert view.").

AO 72A
(Rev.8/82)

Here, however, the Court declines to appoint an expert to testify regarding the effect of facial hair on inmate identification, and to force Defendants, in light of Intervenor's indigence, to bear the overwhelming (if not exclusive) responsibility for the expert's compensation.  Cf., e.g., <u>Martin v. Cohn</u>, No. 3:98-CV-601RM, 1999 WL 325054, at *1 (N.D. Ind. Apr. 5, 1999) ("The court has serious concerns regarding the fundamental fairness of imposing a financial burden on one party solely because the opposing party is indigent or lacks the funds with which to compensate an expert . . . .  The party capable of paying the expert's fee would be penalized solely as a result of having been sued by an indigent party in need of an expert."); <u>Gold v. Dalkon Shield Claimants Trust</u>, No. B-82-383, 1998 WL 351466, at *2 (D. Conn. 1998) ("Although the indigence of one party need not prevent a court from appointing an expert . . . , judges have expressed reluctance to charge all of the costs to one party, unless the non-indigent party agrees to pay."); <u>but cf.</u> <u>Steele</u>, 87 F.3d at 1271 (while expressing no opinion as to advisability of appointing expert, stated: "If, as he claims, Steele is indigent, this could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinions on the issue.").

13

As an initial matter, the question before the Court is not an especially complicated one. See Frazetti v. Marion County Jail, No. CV 04-163-KI, 2004 WL 3058287, at *2 (D. Or. May 21, 2004) (declining to appoint expert where "plaintiff has made no showing that the complexity of this case warrants the appointment of an expert *to assist the court*") (emphasis in original); Lynn v. Simpson, No. 97-3209-JWL, 1999 WL 33177299, at *3 (D. Kan. Dec. 3, 1999) ("While the court has the authority to appoint experts pursuant to Fed. R. Evid. 706, such appointments are not commonplace and are generally reserved for complex, highly technical litigation."); Gold, 1998 WL 351466, at *2 (recognizing that "judges appoint experts infrequently and usually only when there is complex scientific evidence involved," court declined to appoint expert where "[t]he nature of the evidence involved is not so highly technical that the Court requires independent expert guidance").

Appointment of an expert, moreover, is requested, not to assist the Court, but rather, to aid Intervenor in prosecuting his claims. (Intervenor's Resp. to and Adoption of "Pl.'s Rule 59(e) Mot. to Am. and Vacate Order/J." [271] at ¶ 1.)  Litigant assistance is not the purpose of Rule 706. See Pedraza, 71 F.3d at 197 n.5 (affirming refusal to appoint expert where, *inter alia*, movant

14

"requested an appointment only for his own benefit"); <u>Tangwall v. Robb</u>, No. 01-10008, 2003 WL 23142190, at *4 (E.D. Mich. Dec. 23, 2003) ("[T]he appointment of an expert witness for the plaintiff in this case under Rule 706 would be tantamount to the Court assisting the plaintiff in proving his case against the defendants.  Rule 706 was not designed to provide such relief to a litigant."); <u>Aiello v. Frank</u>, No. 03-C-0127-C, 2003 WL 23277415, at *2 (W.D. Wis. June 3, 2003) (refusing to appoint expert where "plaintiff appear[ed] to be asking the court to obtain expert testimony to assist him in presenting his claim, rather than to assist the court to evaluate conflicting evidence").  For these reasons, the Court declines Intervenor's invitation to appoint an expert in this case.[5]

In summary, the Court declines Intervenor's request to re-open discovery or to appoint an expert witness to assist him.  It will, however, permit Intervenor

---

[5]  Notably, as it related to Plaintiff's RLUIPA challenge to the "shaving requirement," this Court's conclusion that Defendants were entitled to summary judgment rested predominately on its reading of Eleventh Circuit precedent.  (<u>See</u> Aug. 1, 2005 Order [262] at 23-26.)  While the Court recognized that the "expert" Plaintiff relied upon to bolster his arguments was both unqualified and equivocal in his testimony, (<u>see</u> <u>id.</u> at 26 n.9), it does not necessarily follow that an expert who testified that facial hair posed no barrier to prisoner or escapee identification would have insulated Plaintiff's claim from dismissal.

to serve interrogatories on Alan Adams directed at uncovering evidence that

"Adams' assertions are pretextual, exaggerated, and that less restrictive means

are available."  (Intervenor's Resp. to and Adoption of "Pl.'s Rule 59(e) Mot.

to Am. and Vacate Order/J." [271] at ¶ 2.)

### D.    Scheduling Matters

Intervenor is instructed to serve interrogatories on the GDC, if at all,

within fifteen (15) days after the date appearing on this Order.  The GDC is

directed to respond within the time and in the manner prescribed by the Federal

Rules.

Intervenor shall then have twenty (20) days from the date on which

interrogatory responses are served within which to file and serve a copy of his

motion for summary judgment.  In the event Intervenor files a motion for

summary judgment, Defendants should respond to Intervenor's filing within

twenty (20) days after service of the motion, placing special emphasis on any

newly offered arguments or newly offered evidentiary support not found in

Plaintiff's filings.  Defendants will also be permitted to file a motion (or cross-

motion) for summary judgment at that time, or, in the event Intervenor elects not

to seek Rule 56 relief, within twenty (20) days from the expiration of the deadline for Intervenor's filing.

## Conclusion

Plaintiff's Motion to Modify the Injunction [276] is **DENIED as moot**. Plaintiff's Motions to Publish [274] and Motion to Amend and Vacate Order/Judgment [268] are **DENIED**.

Intervenor's Motion to Vacate [267] and Motion to Modify Injunction [275] are **DENIED**.  His Motion for Summary Judgment [263] is **DENIED with the right to re-file**.  His Motions to Supplement Motion for Summary Judgment [265] and to Supplement Motion to Amend and Vacate Judgment [279] are **DENIED as moot**.

Finally, the parties are **ORDERED** to comply with all scheduling directives set forth above.

**SO ORDERED** this __15th__ day of March, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)